# United States District Court

### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

TIM LONG PLUMBING, INC.,      §
                              §
      *Plaintiff*,              §
                              §
                              §       CIVIL ACTION NO.  4:20-CV-00042
v.                            §       Judge Mazzant
                              §
KINSALE INSURANCE COMPANY,    §
                              §
      *Defendant*.            §

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Plaintiff's Expedited Motion to Compel Discovery (Dkt. #29). Having considered the motion and the relevant pleadings, the Court finds that Defendant's motion should be **GRANTED in part and DENIED in part.**

## BACKGROUND

This case arises from a denial of an insurance claim.  Plaintiff Tim Long Plumbing, Inc. purchased a commercial general liability insurance policy (the "Policy") from Defendant Kinsale Insurance Company.  The Policy period ran from 01/29/2018 to 01/29/2019.  The Policy included language detailing what the Policy covered and did not cover.

In late February of 2018, the owners of the home located at 1124 Crape Myrtle Lane, Argyle, Texas (the "Home") notified Brian Early ("Early"), the general contractor and Home builder, of a leak in the Home.  Upon inspection, Early found a leak in the master bathroom and large amounts of water damage throughout the master suite.  Plaintiff performed work as the plumbing subcontractor on the Home.

On March 13, 2018, Plaintiff submitted an insurance claim to Defendant for the water leak at the Home.  Later that month, Defendant's Claims Examiner (the "Examiner") acknowledged

the claim via its Acknowledgment of Claim letter (the "Acknowledgement").  The Examiner stated that Defendant had hired a third party, Devon Thyme—an employee of Parker & Associates, LLC—("Thyme") to "assist [Defendant] in [its] investigation of [the claim]."

On March 29, 2018, Thyme inspected and photographed the home.  Thyme gave Early permission to proceed with repairs to the Home due to the time-sensitive nature of the damage. Early then proceeded to repair the Home.  After Early completed repairs, Early provided Thyme with all invoices and receipts associated with the work done on the Home.

On August 21, 2018, the Examiner wrote that Defendant had not accepted or rejected the claim. Defendant wanted to proceed further with testing the failed product that caused the leak. After communications between Plaintiff and Defendant regarding the claim, Plaintiff provided copies of the repair invoices at the request of the Examiner.  Plaintiff continued to follow up with Defendant about the status of the payment.  On January 31, 2019, Plaintiff sent a letter to the Examiner demanding payment for the claim, interest, and attorneys' fees.  On February 8, 2019, Plaintiff's counsel received a Disclaimer of Coverage letter (the "Disclaimer") from Defendant on the basis of Plaintiff's voluntary payment for the repair of the home—an exclusion to the policy. The letter was signed by the Examiner.

On January 17, 2020, this Court received a notice of removal by Defendant (Dkt. #1).  On September 4, 2020, Plaintiff filed an Emergency Motion to Compel Discovery (Dkt. #29).  On September 8, 2020, the Court denied Plaintiff's Motion to Compel pursuant to the Court's Scheduling Order (Dkt. #31).  The Court held a telephonic discovery dispute conference on September 11, 2020.  At the conference, the Court agreed to reinstate Plaintiff's Motion to Compel Discovery (Dkt. #29).  On September 30, 2020, Defendant filed its Response (Dkt. #35).  On October 7, 2020, Plaintiff field its Reply (Dkt. #36).

2

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ." FED. R. CIV. P. 26(b)(1).   Relevance, for the purposes of Rule 26(b)(1), is when the request is reasonably calculated to lead to the discovery of admissible evidence.  *Id.*; *Crosby v. La. Health & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011).   It is well-established that "control of discovery is committed to the sound discretion of the trial court."  *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009) (quoting *Williamson v. U.S. Dep't of Agric.*, 815 F.2d 368, 382 (5th Cir. 1987)).

Rule 37 of the Federal Rules of Civil Procedure allows a discovering party, on notice to other parties and all affected persons, to "move for an order compelling disclosure or discovery." FED. R. CIV. P. 37(a)(1).  The moving party bears the burden of showing that the materials and information sought are relevant to the action or will lead to the discovery of admissible evidence. *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006).  Once the moving party establishes that the materials requested are within the scope of permissible discovery, the burden shifts to the party resisting discovery to show why the discovery is irrelevant, overly broad, unduly burdensome or oppressive, and thus should not be permitted. *Id.*

Federal Rule of Civil Procedure 34 governs requests for production of documents, electronically stored information, and tangible things.  Rule 34 requires responses to "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons."  FED. R. CIV. P. 34(b)(2)(B).  "An objection [to the entire request] must state whether any responsive materials are being withheld on the basis of that objection."  *Id.* 34(b)(2)(C).  On the other hand, "[a]n objection to part of a request must specify the part and permit inspection of the rest."  *Id.*

After responding to each request with specificity, the responding attorney must sign their request, response, or objection certifying that the response is complete and correct to the best of the attorney's knowledge and that any objection is consistent with the rules and warranted by existing law or a nonfrivolous argument for changing the law.  FED. R. CIV. P. 26(g).  This rule "simply requires that the attorney make a reasonable inquiry into the factual basis of his response, request, or objection." FED. R. CIV. P. 26(g) advisory committee note (1983).

The federal rules follow a proportionality standard for discovery.  FED. R. CIV. P. 26(b)(1). Under this requirement, the burden falls on both parties and the court to consider the proportionality of all discovery in resolving discovery disputes.  FED. R. CIV. P. 26(b)(1), advisory committee note (2015).  This rule relies on the fact that each party has a unique understanding of the proportionality to bear on the particular issue.  *Id.*  For example, a party requesting discovery may have little information about the burden or expense of responding.  *Id.*  "The party claiming undue burden or expense ordinarily has far better information—perhaps the only information— with respect to that part of the determination."  *Id.*

## ANALYSIS

Plaintiff argues that Defendant's boilerplate objections are not permitted and are therefore waived.   Further, Plaintiff claims that it only seeks disclosure of relevant documents and information. Plaintiff seeks nine categories of documents: (1) Defendant's underwriting file for the underlying insurance claim; (2) Defendant's entire claim and investigation file(s) for the underlying insurance claim, including all journals, notes, logs, calendars, schedules, photographs, diagrams, sketches, and video and audio recordings; (3) Defendant's internal communications related to the underlying insurance claim; (4) communications between Defendant and any third party related to Plaintiff and/or the underlying insurance claim, specifically including

4

communications with Devon Thyme, Parker & Associates, and Nelson Forensics; (5) all reports and documents provided to Defendant by any third party that relate to the underlying insurance claim, specifically including those reports and documents provided to Defendant by Devon Thyme, Parker & Associates, and Nelson Forensics; (6) all invoices, bills, and fee statements of Devon Thyme, Parker & Associates, and Nelson Forensics relating to their work on the underlying insurance claim; (7) documents relating to any disciplinary action(s) associated with claims handling, investigation, adjusting, or coverage determinations for any of Defendant's employees or third-party representatives who worked on the underlying insurance claim from January 1, 2018 to the present; (8) documents related to any bonus, compensation, and/or incentive plan associated with claims handling, investigation, adjusting, or coverage determinations for any of Defendant's employees or third-party representatives who worked on the underlying insurance claim from January 1, 2018 to the present; and (9) all policies, procedures, guidelines, memoranda, training manuals, videos, instructions, demonstrative guides, and other such documents related to claims handling, investigation, adjusting, or coverage determinations for claims that are the same or similar to the underlying insurance claim from January 1, 2018 to the present.[1]  Plaintiff calls Defendant's assertion of the work-product privilege a "sham" and seeks attorneys' fees.

Defendant contends that its objections were well-reasoned.  Defendant also asserts that Plaintiff is not entitled to its underwriting file, its entire claim file, or its claims handling manual. Defendant also argues that Plaintiff should not be awarded attorneys' fees.

The Court will begin by addressing waiver.

---

[1] Defendant points out in its response that Plaintiff's requests for (7) and (8) have been resolved.  The Court therefore does not address these requests.

## A. Waiver

Many of Defendant's objections to Plaintiff's Requests for Production include the same language.  Plaintiff claims that the repeating of the "same, rote, verbatim objections" are made in "an attempt to withhold documents" (Dkt. #29 at p. 6).  Plaintiff then points to the Court's prior decisions in support of its contention that these "boilerplate" objections are impermissible (Dkt. #29 at p. 6).

It is well-established that parties cannot make general or boilerplate objections to discovery requests.  *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2014).  Rule 34 requires that a response to a Request for Production "must either state that inspection and related activities will be permitted as requested or state an objection to the request, including the reasons."  FED. R. CIV. P. 34(b)(2)(B).  The party resisting discovery "must show specifically . . . how each [request] is not relevant or how each question is overly broad, burdensome or oppressive."  *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990) (quoting *Josephs v. Harris Corp.*, 677 F.2d 985, 991–92 (3d Cir. 1982)).  A party may not "refuse discovery simply by making a boilerplate objection that is not proportional."  FED. R. CIV. P. 26(b)(1), advisory committee's note to the 2015 amendment.  Because "[i]n the face of [general] objections, it is impossible to know whether information has been withheld and, if so, why."  *Heller*, 303 F.R.D. at 483 (quoting *Weems v. Hodnett*, No. 10-cv-1452, 2011 WL 3100554, at *1 (W.D. La. July 25, 2011)).

 Boilerplate objections are those that utilize "standardized text" or "ready-made or all-purpose language." *Star Creek Center, LLC v. Seneca Ins. Co., Inc.*, No. 17-CV-00607, 2018 WL 1934084, at *3 (E.D. Tex. Apr. 23, 2018).  Examples of these general objections include: "Defendant objects to this Request, as it is overly broad and vague" and "Defendant objects to this

6

Request to the extent it seeks discovery of information that is irrelevant and not proportional to the needs of the case." *Id.* Looking to the objections at issue in this case, the Court concludes that they were narrowly tailored as to satisfy Rule 34.

The "boilerplate" objections Plaintiff appears to contest are as follows:

1. Kinsale objects on the grounds that this request is irrelevant to the issues framed by the pleadings, *i.e.*, whether Tim Long made a voluntary payment;

2. Kinsale further objects on the grounds that the documents requested are protected from disclosure by the attorney-client privilege, opinion work product, and work product doctrine. *See Lanelogic, Inc. v. Great American Spirit Ins. Co.*, Case No: 08-cv-1164, U.S. Dist. 2010 WL 1839294, at *5 (N.D. Tex. May 6, 2010) (documents created by an insurer to aid in possible future litigation are protected from disclosure under the work product doctrine).

3. Moreover, Kinsale objects on the grounds that these documents are part of its claim file. Its claim file is not discoverable until Tim Long prevails on the coverage issue. Since the court has not resolved the coverage issue, this type of bad faith discovery is not permissible. *See, e.g., State Farm Auto Ins. Co. v. O'Hearn*, 975 So.2d 633, 637 (Tex.[2] App. Ct. 2008) ("[B]ecuase Republic's obligation to provide coverage has yet to be determined, the trial court departed from the essential requirements of the law in ordering production of Republic's title claim litigation files and documents relating to its business policies regarding the handling of claims. . . ."); *Maryland Am. Gen. Ins. Co. v. Blackmon*, 639 S.W.2d 455, 458 (Tex. 1982) (granting writ of mandamus to prohibit disclosure of insurer's investigation files prior to a determination of coverage dispute under the insured's fidelity bond).

This language is copied and pasted throughout Defendant's responses to Plaintiff's Requests for Production. However, no cited authority claims that copying and pasting an objection, by itself, constitutes the objection "boilerplate." Further, the language is distinguishable from the objections deemed impermissible in *Star Creek*. There, the party seeking production had no way to know whether, and why, information was withheld. *See Star Creek*, 2018 WL 1934084, at *3. Here, Plaintiff knows *what* information was withheld—specifically, the documents being sought in the

---

[2] The Court takes note that this is a Florida Appellate Court case and not a Texas case.

Requests for Production—and *why* the information was withheld—irrelevancy, privilege, and non-discoverability.  Further, Defendant cites to various cases in support of the objections.  While including case cites does not exempt Defendant from being specific, the case law and the associated parentheticals offer support for the reasoning in the objections.  Because the objections were specific and not "boilerplate," the Court finds that the objections were not waived.  The Court will therefore move to the merits of each objection.

### B.  Objections

Plaintiff claims it is seeking only relevant documents and information.  In support of that claim, Plaintiff quotes the Disclaimer—the denial resulted from a purported "comprehensive investigation" of the claim.  Plaintiff argues that "Defendant cannot, on one hand, claim it has no liability for coverage based on its investigation of the underlying claim, and then, on the other hand, object that the documents relating to that very investigation are irrelevant to the issue of coverage"  (Dkt. #29 at p. 7).

Defendant appears to couch Plaintiff's Requests for Production into three broad categories: (1) Defendant's underwriting file; (2) Defendant's claim file; and (3) Defendant's claims handling manual.  Because Defendant asserted the objections, the Court will address each category in turn.

### 1.  Underwriting File

Plaintiff seeks the underwriting file to "show whether Mr. Thyme's representations with respect to coverage were false and/or in bad faith based on [Defendant]'s previous analysis of the risks, coverages, and terms associated with covering [Plaintiff] for claims like the ones at issue here" (Dkt. #36 at p. 3).  The underwriting file is especially important because it "typically contains information related to the insurance company's evaluation of what risks the Defendant expected to cover in the policy and how it interpreted the various policy terms" (Dkt. #36 at p. 3).

Defendant cites two federal district court cases to support its argument that the underwriting file is irrelevant to the claims at issue (Dkt. #35 at p. 3).  However, the Court finds these cases distinguishable.  Further, the Court finds that the underwriting file is relevant for a limited purpose.

In *Guardado*, the court determined that because "Plaintiffs . . . have not explained how the underwriting materials are relevant to their claims in the present lawsuit," it could not order the defendants to compel the documents.  *Guardado v. State Farm Lloyds and Dion McKinley*, No. 3:14-CV-2641-P (BF), 2015 WL 12724048, at *2 (N.D. Tex. Dec. 21, 2015).  Here, Plaintiff has alleged that the files are relevant.  In its reply, Plaintiff notes that an underwriting file typically covers the expected risks covered in the policy and "how [the insurance company] interpreted the various policy terms" (Dkt. #35 at p. 3).  The Court finds that, unlike the plaintiffs in *Guardado*, Plaintiff here has sufficiently identified why the underwriting claim is relevant to the action.

In *Columbia Mutual Insurance Co.*, the court found that the underwriting file had no bearing on the issues in the case.  *Columbia Mut. Ins. Co. v. Kerrville Prof'l Prop., Ltd.*, No. SA-16-CA-00973-XR, 2017 WL7805755, at *2 (W.D. Tex. July 12, 2017).  However, the plaintiff in that case conceded that the underwriting file "relate[d] to an insurer's decision to provide insurance, including issues such as risk assessment and premium setting." *Id.*  Thus, the court did not deem the file irrelevant for *all* purposes—just those asserted by the defendant seeking production.  As stated above, Plaintiff noted that it seeks the underwriting file for information concerning risk assessment.  That reason was specifically conceded by the plaintiff in *Columbia*, and that court therefore did not hold that purpose irrelevant.

The Court finds that Plaintiff has identified a specific reason as to why the underwriting file is relevant to the case.  What Plaintiff has not done, however, is claim that the *entire*

underwriting file is relevant.  The Court therefore determines that, absent privilege, Defendant must only produce those portions that reference Defendant's evaluation of what risks it expected to cover in the policy and how it interpreted the various policy terms.  *See Willis v. Allstate Ins. Co.*, No. 2:13-cv-60-KS-MTP, 2014 WL 11515409, at *2 (S.D. Miss. Apr. 7, 2014) (compelling production of "those portions of the underwriting file that reference the value or potential value of the insured property, including the dwelling and its contents").

### 2. Claims File

Plaintiff seeks (1) Defendant's internal communications related to the underlying insurance claim; (2) communications between Defendant and any third party related to Plaintiff or the underlying claim; (3) all reports provided to Defendant that relate to the underlying insurance claim; and (4) all invoices provided to Defendant by any third party it retained.  Plaintiff contends the documents and information are relevant—the communications sought would show what extent Thyme's consent was known, authorized, approved, and/or ratified by Defendant, and they would show whether the results of Defendant's investigation allegedly merit denial of the claim for the litany of other reasons stated by Defendant.

Defendant claims that it has already produced all documents Plaintiff needs to prove it is entitled to coverage under the policy.

The Court agrees with Plaintiff that the requested documents are relevant to the issues in the case.  Plaintiff brings claims for breach of contract, violation of the Prompt Payment of Claims Act, violations of the Texas Insurance Code, and violations of the Texas Deceptive Trade Practices Act.  Defendant's Examiner proclaimed that the denial of payment resulted from a "comprehensive investigation."  The documents and information pertaining to the underlying claim—the internal communications related to the underlying insurance claim, the communications between

10

Defendant and any third party related to Plaintiff or the underlying claim, and all reports provided to Defendant that relate to the underlying insurance claim—are undoubtedly relevant as to that "comprehensive investigation."  The Court does not see, however, how invoices provided to Defendant by third parties it retained are relevant.  Those documents would show only what the third parties billed Defendant for their work.  The reports provided would have the relevant information from the third parties, and without further explanation by Plaintiff, the Court cannot ascertain the relevancy of the invoices.

Because "documents in an insurance claim file are often of great relevance," the Court finds, absent any privilege, that Defendant must turn over the requested documents and information relating to the underlying claim.  *Heartland World Ministries v. Central Mut. Ins. Co.*, No. 3:13-CV-02337-M-BK, 2014 WL 12580019, at *2 n.1 (N.D. Tex. Apr. 30, 2014).  Defendant is not required, however, to produce invoices provided to it by any third party it retained.

### 3.  Claims Handling Manual

Plaintiff asserts that the claims handling manual is relevant because (1) the claims handling policies and manuals likely indicate under what circumstances and to what extent Defendant's adjusters are permitted to authorize payment of claims, (2) they likely also explain the agency relationship and authority under which Defendant's adjusters act on its behalf, and (3) they would show whether Defendant's coverage denial was reasonable and made in conformity with its own policies.

Defendant asserts that Plaintiff is not entitled to its claims handling manual.  Specifically, Defendant claims that the claims handling manual is irrelevant to Plaintiff's claims because it does not establish whether Defendant consented to the payment made by Plaintiff.  Further, Defendant

notes that Plaintiff does not assert that Defendant's conduct violated its own claims handling guidelines, nor does Plaintiff assert that Defendant acted in bad faith.

The circumstances and extent to which Defendant's adjusters are permitted to authorize payment of claims is relevant to the issues in the case—even the single-issue theory Defendant advances.[3]   Further, an explanation of the agency relationship and authority under which Defendant's adjusters can act on Defendant's behalf is relevant to the scope of Examiner's ability to act for Defendant.

The claims handling manual is redactable.  The Court finds that Defendant must produce its claims handling manual only as it relates to (1) the circumstances and extent to which Defendant's adjusters are permitted to authorize payment of claims and (2) any explanation of the agency relationship and authority under which Defendant's adjusters can act on its behalf.  *See Beck v. Allstate Vehicle and Prop. Ins. Co.*, No. 3:16-CV-3244-D-BK, 2017 WL 11496870, at *3 (N.D. Tex. Sept. 25, 2017) (compelling production of a redacted claims handling manual).

### C. Work-Product Privilege[4]

Plaintiff contends that Defendant's assertions of work-product privilege are a "scam." Plaintiff claims that none of the documents withheld appear to contain any information to or from an attorney, despite being designated as "work product."   Further, Plaintiff asserts that the documents were created and maintained throughout the usual course of insurance claims administration and investigation.

---

[3] Defendant repeatedly asserts that the singular issue in the case is "whether or not [Plaintiff] made a voluntary payment" (Dkt. #35 at p. 6).  Plaintiff disagrees with this single-issue theory.
[4] Defendant asserts that certain requested documents are protected by the attorney-client privilege, opinion work product, and work product doctrine.  However, in its response, it only discusses work product.  The Court will therefore only address Defendant's work-product objections.

Defendant next asserts various privileges over the sought-after documents and information. Specifically, Defendant asserts that it switched from the ordinary course of business to anticipation of litigation on November 6, 2018—thus any documents produced after that date are subject to the work-product privilege.

"The work product doctrine is not an umbrella that shades all materials prepared by a lawyer . . . [t]he work product doctrine focuses only on materials assembled and brought into being in anticipation of litigation." *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982). "Excluded from work product materials . . . are '[m]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation . . . .'" *Id.* (quoting *Proposed Amendments to the Federal Rules of Civil Procedure Relating to Discovery*, 48 F.R.D. 487, 501). For documents to qualify as work product, "litigation need not be imminent . . . as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (quoting *El Paso Co.*, 682 F.2d at 542).

As an initial matter, the first ten-and-a-half pages of Defendant's privilege log assert work-product protection over documents prepared before November 6, 2018.  By Defendant's own admission, these could not have been prepared "in anticipation of litigation."  The Court therefore finds that the documents produced before November 6, 2018 are not shielded by the work-product privilege and should be produced.

For a determination on the documents produced after November 6, 2018, the Court cannot adequately rule without further inspection of the documents.  Defendant must therefore submit all documents over which it asserts work-product privilege produced after November 6, 2018 to the Court within five days of this Order for the Court to conduct an *in camera* review.

13

### D.  Attorneys' Fees

Federal Rule of Civil Procedure 37(a)(5)(A) states that if a movant's motion to compel is granted, the Court "must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." FED. R. CIV. P. 37(a)(5)(A).  This is so unless the movant filed the motion before attempting in good faith to obtain the discovery without court action, the opposing party's nondisclosure, response, or objection was substantially justified, or other circumstances make such an award unjust.  FED. R. CIV. P. 37(a)(5)(A).  Specifically, a "motion is 'substantially justified' if there is a genuine dispute, or if reasonable people could differ as to [the appropriateness of the contested action]." *Zenith Ins. Co. v. Tex. Inst. for Surgery, L.L.P.*, 328 F.R.D. 153, 162 (N.D. Tex. Sept. 14, 2018) (citing *DeAngelis v. City of El Paso*, 265 F. App'x 390, 398 (5th Cir. 2008) (internal quotations omitted)).

The Court finds that the present circumstances do not warrant an award of attorney's fees to Plaintiff.  While the Court found, in part, for Plaintiff, Defendant's responses to requests for production were substantially justified in some instances.  *See Brown v. Bridges*, No. 3:12-CV-4947-P, 2014 WL 1317553, at *5 (N.D. Tex. Apr. 2, 2014) (denying attorneys' fees incurred on a motion to compel because the defendant's responses and objections to the plaintiff's discovery requests were "substantially justified in some instances").  For example, Defendant's objections were not "boilerplate" as Plaintiff suggested, and the objections cloaked in work privilege interpret case law in a reasonable—albeit incorrect—way.  Further, the Court sustained some of Defendant's relevancy objections.  Accordingly, the Court finds that Defendant's responses were

14

substantially justified and that an award of expenses would be unjust.  Thus, Plaintiff's request for attorneys' fees is denied.

## CONCLUSION

It is therefore **ORDERED** Plaintiff's Expedited Motion to Compel Discovery (Dkt. #29) is hereby **GRANTED in part and DENIED in part**.

Defendant must therefore produce the following documents and information if (1) created or obtained prior to November 6, 2018 or (2) if created or obtained after November 6, 2018, Defendant has not asserted work product privilege over the documents and information:

1. The portions of Defendant's underwriting file that reference (1) its evaluation of what risks it expected to cover in the policy and (2) how it interpreted the various policy terms;

2. The portions of Defendant's claim and investigation file(s) for the underlying insurance claim—including all journals, notes, logs, calendars, schedules, photographs, diagram, sketches, and video and audio recordings—that the Court has found relevant:

   a. Defendant's internal communications related to the underlying insurance claim and

   b. Communications between Defendant and any third party related to Plaintiff or the underlying claim

3. The portions of Defendant's policies, procedures, guidelines, memoranda, training manuals, videos, instructions, demonstrative guides, and other such documents related to claims handling, investigation, adjusting, or coverage determinations for claims that are the same or similar to the underlying insurance claim from January 1, 2018 to the present that reference (1) the circumstances and extent to which Defendant's adjusters

are permitted to authorize payment of claims and (2) any explanation of the agency relationship and authority under which Defendant's adjusters can act on its behalf.

4. Defendant must submit any document produced after November 6, 2018 that it asserts work product privilege over to the Court within five (5) days of this Order so that the Court may conduct an *in camera* review.

**IT IS SO ORDERED.**

**SIGNED this 9th day of November, 2020.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE

16